ISRAEL WILSON v. THE HAMPDEN FIRE INSURANCE COMPANY.

The admission of irrelevant testimony, tending to prejudice the party objecting to it may, in the discretion of the court, be ground for new trial; but where the testimony is admitted solely to remove a ground of prejudice caused by the irrelevant testimony of the objecting party, its admission is not only not a ground for new trial, but proper in the discretion of the judge trying the cause, to the impartial ordering of the trial.

In construing the answers to the interrogatories in a printed application for fire insurance, although the proper meaning of the words used is to be first resorted to, yet the meaning attached by the applicant to them, clearly ascertainable from the connection in which he uses them, is to prevail over their proper meaning.

Inaccuracies in the answers to such interrogatories caused by the ambiguity of the interrogatories, taken in their connection with each other, are to be charged to the account of the insurers who prepared the applications.

Where the applicant for insurance against fire on a cotton mill and machinery, to previous questions had answered that the buildings, and machinery, with certain specified exceptions, belonged to one person—himself—and that certain machinery not to be insured in the policy, belonged to one A. H., and that "the works" were not operated by the proprietors but were rented, and in reply to the question, "Are they (the works) immediately superintended by one of the proprietors?" answers "Yes;" the answer is sufficiently verified by the fact that "the works" were superintended by the tenant, A. H.,—in common parlance, a "proprietor," as distinguished from his employees, and who actually owned a part of the machinery run in the works, whether the meaning intended to be conveyed or actually conveyed by the answer, under the circumstances, be considered.

The burden of proving the breach of a promissory warranty in a policy of fire insurance is not upon the insurers; on the contrary, the burden of proving a compliance therewith is upon the assured; and hence the declaration on a policy for a loss under it should aver the performance of such and all other warranties of the assured—a requisite of the declaration sufficiently satisfied by a general averment, that all things have happened which it was necessary should happen to entitle the plaintiff to recover the loss.

MOTION FOR A NEW TRIAL. This was an action on a fire policy effected by the plaintiff with the defendants, through their agent residing in Providence, who was empowered to receive written applications for insurance, to transmit them to the board of the company at Springfield, and if they issued policies upon applications thus sent to them, to receive the premiums and deliver the policies to the assured. The policy was dated the 10th day of September, 1855, and insured the plaintiff's "movable machinery contained in a stone and wood factory in Exeter, Rhode Island," to the amount of $2,500, against loss or damage by fire, from the 13th day of September, 1855, at 12 o'clock at noon, to the 13th day of September, 1856, at 12 o'clock at noon. The policy contained a clause stating that, "This insurance is

predicated upon an application or survey filed in the office of said insurance company as No. 6,779, which application and survey is made part and portion of this policy, and warranty on the part of the assured."

The application and survey, thus made a part of the policy, contained twenty-six printed questions, to which answers were made as required, by the plaintiff; of which those only need be here recited upon which the defences of the company turned. They were as follows :—

*Question* 18.   Are the buildings and machinery both owned by the applicants for this insurance ?   If not, state by whom, and the nature of your interest?

*Answer* 18.   All owned by one, except 8 cards, 1 drawing-frame, and about 75 new tin cans, belonging to Alexander S. Hopkins, not to be insured in this policy.

*Question* 19.   Are the works operated on account of the pro-prietors, or are they rented ?

*Answer.*   Rented.

*Question* 20.   Are they immediately superintended by one of the proprietors ?   If not, by whom ?

*Answer.*   Yes.

These are recited together as pertaining to the first ground of new trial.

The question and answer out of the evidence relating to which the third ground of new trial arose, were as follows :—

*Question* 8.   Is there a watchman in the mill during the night?   Is there a good watch-clock ?   Is the mill left alone at any time after the watchman goes off duty in the morning till he returns to his charge at evening ?

*Answer.*   No.   Mill entered twice after stopped at night, as late as half-past 10 o'clock, to see if every thing safe.

At the trial, which took place in October, at an adjournment of the September term of the supreme court for the county of Kent, before the chief justice, sitting with a jury at East Green-wich, it was proved that the machinery insured, together with the mill in which it was contained, was totally consumed by fire on the night of the 10th of November, 1855.   It was ad-mitted, that the mill had not been superintended by the plaintiff

who was sole proprietor of it, but by Alexander S. Hopkins, the tenant; and the other testimony submitted to the jury, related, principally, to the question, whether the promissory warranty contained in the above answer to the 8th question of the application and survey had been kept. As enough of this testimony appears in the motion for a new trial, the substance of which is hereafter given, a recital of it here is unnecessary to the understanding of the questions raised, and the points ruled, at the trial.

Under the instructions given by the presiding judge, the value of the property destroyed greatly exceeding the amount insured, the jury returned a verdict for the plaintiff for the sum of $2,587.50, being the amount insured, with interest after ninety days from notice and proof of loss, according to the conditions of the policy.

A motion for a new trial was thereupon filed by the defendants upon the following grounds :—

*First*, that the presiding judge " instructed the jury that the word '*proprietors*' in the 20th interrogatory in the application, coupling the same with the 18th and 19th interrogatories and the answers thereto, might fairly be said to include and mean the *tenant;* and that the jury might consider the answer thereto to be true, it appearing that the tenant was the only superintendent."

*Second*, in substance, that upon the refusal of the counsel for the defendants to withdraw the testimony of their agent before put in, that prior to recommending the defendants to execute the policy sued, he inquired the character and standing of the plaintiff, which he found to be good, and that he would not have recommended the continuance of the risk in favor of the former owner, the presiding judge allowed, against objection, the plaintiff to put in testimony, that when first applying for insurance to the agent of the defendants, he informed him who had hired and was to run the mill, as well as the length of the tenancy, and of all the circumstances under which the mill was to run; said evidence in reply being admitted solely for the purpose of rebutting any ground for imputing fraudulent or intentional misrepresentation, and for the purpose of contradicting the testimony of the defendants' agent; the judge excluding the

14 *

same as evidence varying, or tending to vary, the effect of the written application, or of the answers of the plaintiff thereto.

*Third.* In substance, that the plaintiff's tenant and witness, Alexander S. Hopkins, having, as was contended by the counsel for the defendants, contradicted himself in his testimony given at the trial, as to his customary time, after the policy was effected, of entering the mill when it was stopped at night, for the purpose of seeing that all was safe, in compliance with the promissory warranty contained in the answer of the plaintiff to the 8th question of the application and survey, and being also contradicted therein, as contended, by his statements made at other times, sworn to by witnesses for the defendants, the presiding judge, in his charge, instructed the jury, that the burden of proving the breach of the plaintiff's warranty to examine the mill once every night as late as half-past ten o'clock, was upon the defendants, in order to their defence under the same; and that therefore, so far as proof of the breach of said warranty depended upon the testimony of said Hopkins, if the jury, from the contradictory character of the witness's own testimony, and the contradictions of it by his statements sworn to by others, came to the conclusion that they could put no confidence in it, they should disregard it altogether; that it was not to be taken as an admission made by the plaintiff, but so far as relied upon by the defendants to prove the breach of the warranty, as their testimony relied on by them to prove their defence; and the witness in this respect, and for this purpose, was to be regarded as *their* witness, though produced and sworn by the plaintiff.

To expedite the cause, it was agreed that this motion should be heard by the court when sitting at Providence, and the result entered by the clerk of the court for the county of Kent, as of the September term of the court for that county.

The motion was argued at the September term of the court at Providence by *Bradley* for the motion, and by *Cozzens*, with whom was *R. W. Greene*, against it.

*Bradley* contended, upon the first ground of his motion, that the word " proprietors" meant " owners," as distinguished from " tenants," according to Walker, Worcester, Webster, and Bouvier; and that the context, referring to the 18th and 19th interrog-

atories of the application, showed that this strict meaning was the meaning of the defendants in putting the questions; and that by these questions the attention of the applicant was called to that distinction, so as to point the meaning of the word to him, when called upon to answer the 20th interrogatory. He referred to Angell on Fire & Life Ins. § 13, to show that the intent of the parties must control the construction of their language.

On the second ground of his motion, he contended that the evidence therein stated to have been admitted against objection, was at least *irrelevant.*

On the third ground, that the performance of the warranty, though promissory, was a condition precedent upon the plaintiff's right to recover on the policy, and that the burden was therefore upon him, and cited, 2 Phillips on Ins. 683; Angell on Fire & Life Ins. § 375; *Coolidge* v. *N. Y. Fireman's Ins. Co.* 14 Johns. 308, 314; *Flagg* v. *N. Y. Ins. Co.* 1 Caines, 545; *Barker* v. *Phœnix Ins. Co.* 8 Johns. 307; 5 East. 398, 399; *Craig* v. *U. S. Ins. Co.* 1 Peters, 410; 6 Cowen, 467; Stephens's N. P. 2215; *Ludlow* v. *Union Ins. Co.* 2 Serg. & Rawle, 119.

*Cozzens & Greene* argued, as to the first ground of the motion, that the applicant was naturally misled by the plural form in which the 20th interrogatory was put, notwithstanding the prior answers given; and that if this were so, as the questions and mode of putting them was the defendants, they must be answerable for the consequences; and the rigid meaning of the words was to yield to the real or apparent intent, meaning, and understanding of the parties. They cited, Phillips on Ins. 483; Angell on Fire & Life Ins. § 143; 25 Wend. 374, Nelson, J.; *Wall* v. *Howard Ins. Co.* 14 Barb. Sup. Ct. R. 385; 22 Conn. R. 575.

As to second ground of motion, they agreed that the evidence admitted was irrelevant, and so no ground for new trial.

As to third ground of motion, they argued that the burden of proof of breach of warranty was as ruled; and noticed, that if it was not, their declaration was fatally defective, inasmuch as it contained no allegation of the performance of the promise of the warranty in question; and theirs had been the mode of declaring always used in this state. They cited Angell on Fire & Life Ins. § 375; 2 Phillips, § 2122.

AMES, C. J.   A motion for a new trial has been made in this cause, on the ground that the judge who presided at the trial permitted, notwithstanding objection made, improper testimony to pass to the jury; and also misdirected them, as to the construction to be put upon an answer given by the plaintiff to *one* interrogatory put to him on the application upon which the policy was based, and again, as to the burden of evidence in relation to the performance of a promise made by the plaintiff in his answer to *another* interrogatory in the application.   In giving judgment upon this motion, we shall consider, shortly, in the order in which we have named them, these causes, alleged by the defendants why their motion should be granted.

*First.* The admission of improper testimony complained of consisted, in allowing the plaintiff to rebut an inference which the jury might draw to his disadvantage from evidence put in by the defendants, unless the defendants would consent to withdraw that evidence, which was clearly irrelevant to any issue arising on the trial.   It is said, that guarded in purpose even as the admission of this rebutting testimony was, it was at least irrelevant testimony, and ought to have been rejected.   The admission of irrelevant testimony, tending to prejudice the jury against a party might, in the discretion of the court, be a ground for new trial on his motion; but where, as in this case, the testimony seems to have been admitted solely to remove a ground for prejudice against the plaintiff caused by the irrelevant testimony of the defendants, its admission is not only not a ground for a new trial, but the testimony might have been very properly received by the judge in his discretion, for the impartial ordering of the trial.

*Second.* The next cause for new trial alleged is, that the judge misdirected the jury in construing, in its connection, the word "proprietors," used in the 20th interrogatory of the application, to be broad enough in its meaning to include the tenant of the works concerning the superintendence of which that interrogatory was put, in justification of the truth of the answer of the plaintiff thereto.

In deciding a question of this kind, it by no means follows that the rigid meaning of a word used in an interrogatory will

ascertain the meaning conveyed thereby in the question, or, what in such a case as this is quite as important, the meaning actually conveyed in response thereto, in the answer. The notion conveyed by the plaintiff in the answer complained of is the substantial matter here ; and although the proper meaning of the words of the question are certainly to be first resorted to in order to understand the answer, it would be giving the proprieties of language the precedence over its purpose, to allow these to prevail over the obvious meaning conveyed by an uneducated man, clearly ascertainable from what he said, taken in the connection in which he said it. So fully is the good sense and justice of this recognized by the common law, that it requires the whole of a written document, letter, or the like, to be put in evidence, if any part of it is to be used against a party ; so that any imperfection, defect, or excess of the language used in it, whether necessary or accidental, may be explained or cured by the context in which it stands, or the purposed qualifications which accompany it. To the construction of no species of document does the spirit of this rule apply with more force than to the application or survey, as it is called, usually made part of a modern policy of life or fire insurance. Filled with numerous questions, many of them consisting of several clauses, and drawn up with the skill of cross-examining counsel of the first class, printed in fine type, and scattered broadcast by agents amongst the many little property holders of such a country as ours, who from habit and education are wholly unfitted, without assistance, to disentangle the meaning from the skilfully contrived network of questions in which it is involved, the wonder is, not that some contain answers intelligible enough but not consistent with the proprieties of diction, but that so many questions are, in general, so properly answered. When it is considered that every one of the answers to every one of these numerous interrogatories of many clauses, is, as in this case, frequently made " a warranty on the part of the assured," and yet that they are responded to by the uneducated and unreflecting, without assistance, every day, all ignorant of the critical position in which they are thus placing themselves, we see reason enough for looking at the substantial meaning intended

and conveyed by them, without holding them too strictly to the refinements and proprieties of language. The practice adopted by insurance companies for their own convenience, of putting so many questions in their printed forms in the plural, when if the questions had been put successively and after the answers to the previous questions had been read, the singular would have been adopted, has, as we see in the case before us, a strong tendency to mislead. No doubt if the singular number were adopted in these forms it would have a like tendency; the difficulty growing out of and inhering to the practice, in any form, of putting so many and complex questions, before the previous answers can be known to guide their form, without, as in case of depositions, having an experienced magistrate or commissioner to aid by explanation the respondent. This mode of interrogation is the practice of the companies, and these printed forms are prepared by them; and we have the high authority of Lord St. Leonards, in a recent case of a life policy tried on appeal in the house of lords, and in relation to this very species of instrument of insurance companies under the very practice of which we speak, that " if," to quote his own language, "there be any ambiguity in it, it must be taken according to law more strongly against the person who prepared it." *Anderson* v. *Fitzgerald*, 24 Eng. L. & Eq. R. 11.

Now the matter under this policy stands thus: the applicant, having to previous questions answered, that the *buildings* and machinery both belonged to *one* person—himself—except certain specified machinery which he states to *belong* to Alexander S. Hopkins, and not to be insured in this policy, and having also previously answered that " the works " are not operated on account of " the proprietors," but are rented, is next pursued with the question, "Are they (the works) immediately superintended by *one* of the *proprietors ?*" to which he answers, " Yes"; the fact being, as was proved, that they were superintended by the same Alexander S. Hopkins, who rented the works of the applicant, and who was " the proprietor " named in the answer to a previous question, of a part of the machinery operated in those very " works." It is true, as is remarked by the counsel for the defendants, that the questions considered by themselves, mark

the distinction between "proprietors" and those to whom the buildings are "rented," and that this distinction accords with the proper meaning of the word "proprietors" as laid down in the dictionaries; but it is also true, that in common parlance, the person who runs a mill, is, amongst us, though but a tenant, usually spoken of as the "proprietor" of it, to distinguish him from his superintendents and work-people; and that when the applicant has just said that he alone *owned* the mill and another man *hired* it, and is, notwithstanding, then asked, whether it is operated by "*one* of the *proprietors*," there being in the *strict* sense, as he has just explained, but *one* proprietor, he might naturally conclude that the word "proprietors" as now repeated must have been intended to include the tenant, according to an *ordinary* use of it. It is evident that here is an ambiguity, to say the least of it, created by the plural form of the last question, continued, notwithstanding it was calculated, considering his former answers, to mislead the respondent, if the strict meaning of the word "proprietors" was intended to be preserved in the question. If this be so, the rule, as we have seen, requires that the meaning of the question be taken most strongly against the defendants who framed it, and who, if misled by the answer, have no right to complain, since they misled the applicant by their mode of putting the question which elicited it.

But beside this, there is a sense in which the answer of the applicant is true, attributing to the word "proprietors" in the 20th interrogatory of the application its strictly proper meaning, the same which it had, and was understood by the applicant to have in the 19th, which immediately precedes it. The applicant had already explained, and the fact was proved to be so at the trial, that Alexander S. Hopkins, who was the tenant, owned a part of the machinery in the same mill which contained that insured under this policy, and which was operated along with it, as part of the same "works." When, therefore, the applicant was further asked whether "the works" were immediately superintended by "*one* of the proprietors," he might, with entire truth and with strict propriety in the use of language, answer, as he did, that they were. It is said by the counsel for the defendants, in reply to this view of the matter, that the questions

in the application were of course understood, and intended to be understood, as applying only to the property insured; which in this case, would be part only of the movable machinery in this mill. Upon examination, however, it will be found, that the questions were neither designed by the company, nor understood by the assured, to have so limited an application. The 18th question asks, if "the buildings" which were not insured under this policy, as well as "the machinery," a part of which only was, are "both owned by the applicants for this insurance? If not, state by whom, and the nature of your interest." So much for the question, indicating the intent of the office to ascertain by it the ownership of other property than that insured. Then look at the answer to it, which shows that the insured rightly understood that it had this wider application: "All owned by one, except 8 cards, 1 drawing-frame, and about 75 new tin cans, *belonging* to Alexander S. Hopkins, *not to be insured in this policy.*" When, therefore, he was asked in only the question but one succeeding, whether "*the works*" were "immediately superintended by *one* of the *proprietors?*" he might well understand that this question, as well as the 18th, related to other property than that asked to be insured, to wit, to all the property included in "the works" and operated as a part of them; and thus not only truly, but with strict propriety, answer as he did, that they were superintended by one of the "proprietors,"—that is, by Alexander S. Hopkins, who, as had been before explained, was the proprietor of a part of the machinery operated.

There is another view of this matter, which is in our judgment of especial importance; and for that reason, the attention of counsel was particularly directed to it at the argument. The only ground upon which the defendants can fairly object to this, or to any other answer to the numerous questions which they have put, is, not that it is not worded with nice attention to the proprieties of the English language, but that the meaning conveyed by it to them has misled them as to the basis of facts upon which, to use their own language, "this insurance was (is) predicated." The supposition thus made, is, however the fact may have been, that this application and survey, having been filled

up by the applicant, was transmitted to the office of the company at Springfield, Mass., by its agent, and was there laid before the board of directors, as a statement of facts warranted to be true, upon which, after due consideration, they were to decide whether they would take the risk offered, and if they did, at what premium. Now the substantial question is, did this board—could this board, if, as was their duty both to the applicant and the company, they carefully read over the successive questions and answers of this application and survey, have understood that Israel Wilson, who in it told them that he had rented this little mill, and all the machinery in it of which he was the proprietor, nevertheless "immediately superintended" it for his tenant, in the sense in which such *superintendence* is agreed to be understood by men accustomed to the use of the ordinary language applied to the management of this species of property? Such an idea so reverses the customary relations between the landlord and tenant, that at least it must have induced them more critically to scan the language employed in the questions and answers of the application, to see if it could be the meaning thereby intended to be conveyed; and we are all satisfied that if they had done this, they must have discovered, at least, that misled by the ambiguity of the question created by the form in which it occurred after, and in connection with the previous questions and answers, the applicant had understood, as he well might, that the word "proprietors" included the tenant; or, as we rather incline to think, that supposing the question related to all the machinery in the "works," as well that not to be insured, as that to be insured under the policy applied for, he intended, when he answered that "the works" were immediately superintended by "one of the proprietors," that they were superintended, as such small works usually are, by the tenant, who, by a previous answer to a question in the application, was stated to be a proprietor of a part of the machinery operated in the works. Whichever way this is considered, the objection taken to recovery on this ground fails, and this motion, so far as it depends upon it, cannot be granted. We have been at this pains to explain the reasons for our coming to a conclusion, which, upon reflection, it seems very easy

to reach, because conscious of disapproving the system of late adopted, of making every answer to the numerous and involved questions in an application for a fire policy, however unimportant, a warranty, we are fearful lest that might be deemed to sway us from our duty, by unconsciously leading us to pervert, to the injury of a company which, after all, in this respect, but follows the common example, the intent and import of an instrument which formed the basis of the contract of insurance into which they have entered. Such a wrong to the administration of the only justice we can know, that measured out by the law, we estimate as of deeper injury, than any which the practice we disapprove can inflict; and except to give all parties before us, fairly and unswervingly the benefit, benign or severe, of the law as applied to their conduct and contracts, we are the masters of none—we are the guardians of none, whom the law permits or enables to act or contract, as they will, for themselves. Considering every answer in this application, as the parties have expressly made it, a warranty, we have not asked ourselves how material the answers in question may be to the risk, since that has been already determined by the parties for themselves. *They* have made the truth of each and all of the answers in this application a condition precedent to the right of the assured to recover on this policy; and we have therefore confined ourselves to the humbler office of construing their language, instead of rising to the consideration of the materiality of the facts about which they have chosen to employ it.

The last cause for new trial alleged in this motion, is, that the presiding judge, adverting in his charge to the position in which the defence would be left, (so far as the testimony of the plaintiff's witness, Alexander S. Hopkins, was relied on by the defendants to prove the breach of the promissory warranty made by the plaintiff, that the mill should be entered as late as half-past ten every night to see that all was safe,) if the testimony of that witness should be rejected, instructed the jury, that the burden of proving the breach of that warranty, was upon the defendants, instead, as he should have done, instructing them that the burden of proving its performance was upon

the plaintiff. Such an instruction was calculated, in the position in which the motion discloses that the defence upon this point stood in proof before the jury, materially to injure the defendants therein, and would therefore, if wrong, furnish a sufficient ground for new trial on their motion. We are all satisfied that this instruction was wrong; the judge confounding the distinction, so well taken and applied by the supreme court of Massachusetts, in the late case of *Crowninshield* v. *Crowninshield*, 2 Gray, 530–532, between what makes out a *primâ facie* case, and what shifts the burden of proof, and, what is more radical, the distinction between a promissory warranty of the quality of the thing sold in a contract of sale, and a promissory warranty, like this, in a policy of insurance. In the former case, if, when the seller sues to recover the price, the buyer relies on a breach of the warranty as a total or partial defence, the burden of proof is upon him to show the breach of warranty; for the same reason that it would be, if he sued for breach of the warranty, instead of being permitted, as he is in this country, to avoid circuity of action, to defend himself by means of it in the suit brought against him for the price. *Dorr* v. *Fisher*, 1 Cush. 271, 274, 275. In such a case, says Chief Justice Shaw, in delivering the opinion of the court, in the case just cited: " It (the warranty) is not strictly a condition, for it neither suspends nor defeats the completion of the sale, the vesting of the thing sold in the vendee, nor the right to the purchase-money in the vendor. And, notwithstanding such warranty, or any breach of it, the vendee may hold the goods and have a remedy for his damages by action." Ibid. 274. On the contrary, in a contract of insurance, " a warranty," to use the language of Lord Mansfield, "is a condition or a contingency, and unless that be performed there is no contract." *DeHahn* v. *Hartley*, 1 T. R. 345, 346. This holds true, whether the warranty relate to things past, present, or to come, or is found in a marine, fire, or life policy. The text-books are full of this doctrine, and no case can be found contravening it. 1 Marshall on Ins. 348. Hughes on Ins. 308. 2 Phillips on Ins. 753, 2d ed. 1 Arnould on Ins. 581–584, and cases cited. Angell on Fire & Life Ins. § 142. There is, however, a class of cases nearly resembling these, which is apt to be confounded with them; and an im-

perfect recollection of which partly caused the erroneous direction in question. Where the promissory stipulation is not made a warranty, and the courts are inclined, if they can, to construe them to be representations merely, the proof of the breach of such stipulations is matter of defence only, and the burden of proof rests, of course, upon the defendants. *Catlin* v. *Springfield Fire Ins. Co.* 1 Sumner, 435, 443. *Houghton et al.* v. *Manufacturers' Mut. Fire Ins. Co.* 8 Metcalf, 114, 120. *Underhill* v. *Agawam Mut. Fire Ins. Co.* 6 Cush. 440, 446. *Jones Manufacturing Company* v. *Manufacturers' Mut. Fire Ins. Co.* 8 Cush. 82, 84. It follows, from the nature of the case, that a declaration upon a policy containing express warranties should always aver the performance of them by the assured, although, as ruled last year by the court of common pleas in England, " the general averment that all things have happened which it was necessary should happen to entitle the plaintiff to be paid, is sufficient." *Bamberger* v. *The Com. Credit Ass. Co.* 29 Eng. L. & Eq. R. 312. In New York, it seems, that under the old forms of pleading, even this was not deemed necessary. *Hunt* v. *Hudson River Fire Ins. Co.* 2 Duer, 481. It is clear, however, upon principle, to use the words of Mr. Justice Washington, in *Craig* v. *The U. S. Ins. Co.* 1 Peters's C. C. R. 410, that where the assured has entered into a warranty, he cannot recover against the underwriters "without first averring and proving performance of these stipulations"; and see 2 Phillips on Ins. 753, 2d ed.; 2 Arnould on Ins. 1262, 1325. The burden of proving the performance of all warranties made by him rests upon the assured; and although this burden may be *lifted* by presumption merely, as in case of the implied warranty of seaworthiness it is held to be, yet this cannot *shift* the burden, which remains, notwithstanding the *primâ facie* case thus made out by the plaintiff, where the law first casts it, to the end of the trial. 1 Arnould on Ins. 686, n. 1, and cases cited.

Upon the ground of the misdirection of the judge trying this cause, in the particular last referred to, a new trial must be granted to the defendants; the plaintiff to have leave to amend his declaration, by inserting .the general averment of performance above mentioned, and the costs of this motion to abide the event of the suit.